# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SARAH LANAE TURNLEY** | **CIVIL ACTION NO.** |
| **VERSUS** | **25-571-JWD-EWD** |
| **DISCOVER BANK** | |

*CONSOLIDATED WITH*

| | |
|---|---|
| **SARAH LANAE TURNLEY** | **CIVIL ACTION NO.** |
| **VERSUS** | **25-648-JWD-EWD** |
| **DISCOVER BANK** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 28, 2026.

                                            **ERIN WILDER-DOOMES**
                                            **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SARAH LANAE TURNLEY | CIVIL ACTION NO. |
| VERSUS | 25-571-JWD-EWD |
| DISCOVER BANK | |

*CONSOLIDATED WITH*

| | |
|---|---|
| SARAH LANAE TURNLEY | CIVIL ACTION NO. |
| VERSUS | 25-648-JWD-EWD |
| DISCOVER BANK | |

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Before the Court is the Motion to Compel Arbitration and Dismiss (the "Motion"), filed by Capital One, N.A.[1] Sarah Lanae Turnley ("Plaintiff") opposes the Motion,[2] and Defendant as filed a reply memorandum.[3] Oral argument is not necessary. Having thoroughly considered the parties' arguments, the applicable law, and the facts, it is recommended that the Motion be denied without prejudice and that a summary trial be held on the issue of whether an arbitration agreement was validly formed between the parties following a limited time for the parties to conduct narrowly tailored discovery on the issues of contract formation and ratification/confirmation.

---

[1] R. Doc. 8. Documents in the Court record are referred to as "R. Doc. __." The named defendant in these consolidated cases is Discover Bank; however, Capital One, N.A. ("Capital One") states that Discover Bank was merged into and became a part of Capital One on May 18, 2025, such that Discover Bank no longer exists. Capital One asserts that under the National Bank Act, as the surviving entity, it has all rights and interests that Discover Bank had before the merger, including rights and receivables, and that Capital One is Discover Bank's successor in interest in any pending litigation. R. Doc. 8-1, p. 1, n. 1; R. Doc. 8-2, pp. 3-4, ¶¶ 4-7. The term "Defendant" is used in this Report to refer to Discover Bank and/or Capital One.

[2] R. Docs. 10, 20, 24. Although Plaintiff did not seek leave to supplement her original opposition memorandum, because she is representing herself, all documents filed in opposition to the Motion were considered.

[3] R. Doc. 19.

I. **BACKGROUND**

Defendant's attempt to compel arbitration of Plaintiff's claims in these consolidated cases arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 and 1681c-2 and for negligence under state law for improper reporting of a credit card account that Plaintiff claims was opened when she was a minor.[4] The parties do not dispute that the account was opened between March and April 2020.[5] Plaintiff has provided a sworn declaration and her birth certificate in support of her assertion that she was a minor when the account was opened,[6] such that she cannot be bound to the arbitration provision in the Cardmember Agreement. Defendant does not appear to dispute that Plaintiff was underage when the account was opened but suggests that she ratified the contract after she reached the age of majority because the account was used after that time for purchases on an Apple Pay account linked to "sarah's apple watch" and that payments were also made on the account after Plaintiff reached the age of majority.[7] Because there is a genuine dispute of material fact as to whether an agreement between the parties was formed, a summary trial is necessary.

II. **LAW AND ANALYSIS**

A. **Legal Standards**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."[8] Further, the FAA allows "a party aggrieved by the alleged

---

[4] R. Doc. 1-1, pp. 3-4; Civil Action No. 25-648, R. Doc. 1-1, pp. 4-5. The allegations in both cases are essentially the same.

[5] R. Doc. 8-2, p. 4, ¶ 10; R. Doc. 8-2, p. 9; R. Doc. 10-10, p. 2., ¶ 1.

[6] R. Doc. 10-10, p. 2, ¶ 2; R. Doc. 10-2 (showing Plaintiff's date of birth as February 26, 2003).

[7] R. Doc. 19, pp. 4-5.

[8] 9 U.S.C. § 2.

… refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement."[9] "If the making of the arbitration agreement or the failure, neglect, or refusal to perform same be in issue, the court shall proceed summarily to the trial thereof."[10]

"A two-step inquiry governs whether parties should be compelled to arbitrate a dispute. 'First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable.' In conducting this two-step inquiry, courts must not consider the merits of the underlying action."[11]

Whether the parties must arbitrate Plaintiff's claims in this case turns on the threshold question of "whether the parties entered into any arbitration agreement at all."[12] If no arbitration contract was formed, this Court need not consider the scope of the arbitration agreement.[13] The "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."[14] Courts "apply 'ordinary state-law principles that govern the formation of contracts' to determine whether an arbitration contract was formed."[15] If the existence of an arbitration contract between parties is challenged, that challenge is always for

---

[9] 9 U.S.C. § 4.

[10] *Id.*

[11] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citations omitted).

[12] *IMA, Inc. v. Columbia Hosp. Med. City at Dallas, Subsidiary L.P.*, 1 F.4th 385, 390-91 (5th Cir. 2021), citing *Kubala v. Supreme Prod. Servs., Inc*., 830 F.3d 199, 201 (5th Cir. 2016) (emphasis omitted); *see also Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) ("[B]ecause arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration.").

[13] *Id.*, citing *Cf. Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) (determining scope of arbitration clause only because there was no dispute that the parties were subject to a valid arbitration agreement).

[14] *IMA, Inc*, 1 F.4th at 391, citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.), opinion supplemented on denial of reh'g, 303 F.3d 570 (5th Cir. 2002).

[15] *Id.*, citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

the courts to decide.[16] The Supreme Court has suggested certain categories of arguments that go to the question of the existence of an agreement to be decided by the courts, including "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent."[17] Once the arbitration contract itself has been established, however, then whether that contract may be enforced for or against the parties in the particular case is for an arbitrator to decide.[18]

### B. Limited Discovery and a Summary Trial are Warranted on the Issue of Whether the Parties Entered an Arbitration Agreement

Here, because the parties dispute the existence of an arbitration contract between them, the Court must initially decide the issue. In support of their Motion, Defendant provides the following information relevant to whether the parties formed a valid agreement to arbitrate:

- An internet credit card application was submitted in Plaintiff's name on or about March 20, 2020.[19]

- Plaintiff is listed as the "Primary Applicant" on the application.[20]

- Plaintiff was ultimately approved for the credit card and a copy of the physical credit card and the Cardmember Agreement were mailed to Plaintiff at the address listed on the application.[21]

---

[16] *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020), citing *Will-Drill*, 352 F.3d at 219. Regardless of whether the arbitration clause at issue contains a delegation clause, as argued by Defendant, whether there was an agreement between the parties at all is an issue properly decided by the Court. *See Will-Drill*, 352 F.3d at 219 ("In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator never had any authority to decide the issue. A presumption that a signed document represents an agreement could lead to this untenable result. We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute."); *see also Arnold v. Homeway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) ("[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter.").

[17] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).

[18] *Bowles,* 954 F.3d at 725, citing *Will-Drill*, 352 F.3d 211 at 218.

[19] R. Doc. 8-2, p. 4, ¶ 10; R. Doc. 8-2, p. 9.

[20] R. Doc. 8-2, p. 9.

[21] R. Doc. 8-2, p. 4, ¶¶ 10-11.

- The Cardmember Agreement sets forth the terms and conditions that govern credit card accounts and the relationship between the parties.[22]

- Neither the Cardemember Agreement nor the credit card mailed to the Plaintiff's address were returned as undeliverable.[23]

- The credit card was activated on April 10, 2020.[24]

- The Cardmember Agreement provided that use of the credit card constituted acceptance of the terms of the Cardmember Agreement.[25]

- From April 2020 to June 2021, purchases were made on the account.[26]

- On May 17, 2021, a purchase was made on the account and the merchant provided proof of delivery of the purchased merchandise to the address on the credit application.[27]

- The Cardmember Agreement contains an arbitration provision.[28]

- According to Defendant's records, Plaintiff did not timely opt out of the arbitration provision of the Cardmember Agreement.[29]

In opposition to the Motion, Plaintiff provides the following information relevant to the question of whether the parties formed a valid arbitration agreement:

- Plaintiff was born February 26, 2003.[30]

- When the account was opened, Plaintiff was seventeen (17) years old.[31]

---

[22] R. Doc. 8-2, p. 4, ¶ 11.

[23] *Id.*

[24] R. Doc. 8-2, p. 5, ¶ 12.

[25] R. Doc. 8-2, p. 5, ¶ 13; R. Doc. 8-2, p. 11 ("You accept this Agreement if you do not cancel your Account within 30 days after receiving a Card. You also accept this Agreement if you or an Authorized User use the Account. You may, however, reject the 'Arbitration of Disputes' section as explained in that section.").

[26] R. Doc. 8-2, p. 5, ¶ 14; R. Doc. 8-2, pp. 16-159.

[27] R. Doc. 8-2, p. 5, ¶ 16; R. Doc. 8-2, p. 98.

[28] R. Doc. 8-2, pp. 13-14.

[29] R. Doc. 8-2, p. 6, ¶ 18.

[30] R. Doc. 10-2, p. 2.

[31] R. Doc. 10-10, p. 2, ¶ 2.

- Plaintiff filed a report with the Baton Rouge Police Department claiming identity theft beginning in 2018,[32] including related to the account at issue.

- Plaintiff also filed an Identity Theft Report with the Federal Trade Commission that appears to list the account at issue.[33]

Defendant must present evidence sufficient to demonstrate an enforceable agreement to arbitrate. If Defendant does so, the burden shifts to Plaintiff to raise a genuine dispute of material fact for trial. At this juncture, Plaintiff's evidence is to be believed, and all reasonable inferences drawn in her favor.[34]

Fact issues prevent a determination of whether the parties entered into a valid contract to arbitrate at all based on the information provided at this time. It does not appear that Defendant plausibly disputes Plaintiff's evidence that she was a minor when the credit card account was opened in March/April 2020.[35] State law governs the question of contract formation.[36] Louisiana law generally provides that unemancipated minors lack the legal capacity to contract, with exceptions not relevant here.[37] Contracts made by minors are relative nullities under Louisiana law and may be rescinded.[38] However, those contracts can also be confirmed when the age of majority

---

[32] R. Doc. 10-9, p. 2.

[33] R. Doc. 20-6, p. 3.

[34] District courts in this Circuit generally apply a summary judgment-like standard to a motion to compel arbitration. *See AKM Enterprises, Inc. v. Hayes*, 767 F.Supp.3d 447, 451 (S.D. Tex. 2025) (noting that, while the Fifth Circuit has not articulated the standard, district courts apply the standard applicable under Federal Rule of Civil Procedure 56, as does every other circuit and there is no reason to think the Fifth Circuit would do otherwise).

[35] While Defendant says it does not admit the truth of Plaintiff's allegations regarding her age at the time the account was opened, nor does Defendant provide evidence to credibly contradict Plaintiff's evidence, including her birth certificate. *See* R. Doc. 8-1, p. 10, n. 3; R. Doc. 10-2.

[36] *IMA, Inc*, 1 F.4th at 391, citing *First Options of Chicago, Inc.*, 514 U.S. at 944.

[37] La. Civil Code art. 1918 ("All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting."); La. Civil Code art. 1923.

[38] La. Civil Code art. 1919 ("A contract made by a person without legal capacity is relatively null and may be rescinded only at the request of that person or his legal representative.").

6

is reached.[39] Likewise, under the law of Delaware, which the Cardmember Agreement states governs the parties' relationship,[40] a person does not generally have the capacity to contract until she reaches the age of majority;[41] however, a contract can be ratified when the age of majority is attained.[42]

Defendant argues that Plaintiff validated the contract by ratification when she continued to accept contractual benefits after she reached the age of majority.[43] By her own evidence, Plaintiff turned eighteen on February 26, 2021. While evidence that *Plaintiff* used the account or made payments after this time may be relevant to the question of whether she confirmed or ratified the Cardmember Agreement, the evidence presented by Defendant is not conclusive on this point. Defendant's evidence shows that the account was linked to Apple Pay on a device labeled "sarah's apple watch,"[44] but Plaintiff has denied owning an Apple watch.[45] Defendant's other evidence is that a purchase was made on the account May 17, 2021.[46] While an affiant attests that Defendant's "records reflect that on July 21, 2021, the merchant provided proof of delivery of the purchased

---

[39] La. Civil Code art. 1842 ("Confirmation is a declaration whereby a person cures the relative nullity of an obligation. An express act of confirmation must contain or identify the substance of the obligation and evidence the intention to cure its relative nullity. Tacit confirmation may result from voluntary performance of the obligation.").

[40] R. Doc. 8-2, p. 13 ("This Agreement is governed by applicable federal law and by Delaware law. However, in the event you default and we file a lawsuit to recover funds loaned to you, the statute of limitations of the state where the lawsuit is filed will apply, without regard to that state's conflicts of laws principles or its 'borrowing statute.'").

[41] 6 Delaware Code § 2705 ("Any person who has attained 18 years of age shall have full capacity to contract; provide such person has not been declared legally incompetent to contract for reasons other then age. Any person who has attained the age of 18 years shall become fully responsible for that person's own contracts.").

[42] *See Kuehn v. Cotter*, No. 96,2013, 77 A.3d 272 (De. 10/15/13) (loan contract with borrower who was 17 years old at the time of the transaction was voidable, not void, and was subject to ratification by the borrower).

[43] Defendant uses the word "ratification." Under Louisiana law there is also the concept of "confirmation." While the legal standards are essentially the same, confirmation applies to cure a relative nullity, while ratification amounts to consent to an obligation incurred by another without authority. *Compare* La. Civil Code arts. 1842 and 1843. The terms are used interchangeably in this Report.

[44] R. Doc. 8-2, p. 6, ¶15.

[45] R. Doc. 20, p. 2.

[46] R. Doc. 8-2, p. 5, ¶ 16; R. Doc. 8-2, p. 98.

7

merchandise to the address provided on [Plaintiff's] credit application,"[47] there is no supporting evidence of that statement in the record.[48] Additionally, while the evidence submitted by Defendant shows that payments were made on the account after Plaintiff turned eighteen,[49] there is no evidence that *Plaintiff* made the payments. Fundamentally, Defendant's evidence regarding confirmation/ratification is lacking because it does not show that *Plaintiff* undertook these activities.[50]

In contrast, Plaintiff claims she was the victim of identity theft,[51] but while her sworn declaration states that she discovered the fraud, and reported it to Defendant, as early as 2021, the police report and FTC Identity Theft Report submitted by Plaintiff are dated several years later.[52] Plaintiff also claims Defendant acknowledged the fraud to regulators, such that Defendant is estopped from claiming otherwise in court.[53] The correspondence from Defendant to the Consumer

---

[47] R. Doc. 8-2, p. 5, ¶ 16.

[48] Defendant argues in its briefing that the address to which this merchandise was delivered is also the same address Plaintiff uses on her pleadings in this case (R. Doc. 12, p. 4), but that evidence is not in the record.

[49] *See, e.g.*, R. Doc. 8-2, p. 78 (showing internet payments in March 2021); p. 84 (showing internet payments in March/April 2021); p. 92 (showing internet payments in April 2021); p. 98 (showing internet payments in May 2021); p. 104 (showing internet payments in June 2021).

[50] In one of her opposition briefs, Plaintiff says that she never used the Discover card at issue. R. Doc. 24, p. 1 ("Plaintiff never applied for, received, or used any Discover card."); *see also* R. Doc. 10-10, p. 2, ¶ 2 (Plaintiff's sworn declaration) ("I was **17 years old** at the time the account was created and did not authorize, apply for, sign for, or benefit from the Discover card in question.") (emphasis in original).

[51] It should be noted that Plaintiff's sworn declaration and opposition memorandum seem to imply that the identity theft may have been the result of someone living in her home. R. Doc. 10, p. 2 ("[S]he lived in an abusive household where her information was likely stolen."); R. Doc. 10-10, p. 2, ¶ 3 ("At that time, I was living in a financially, emotionally, and physically abusive household. My personal information was accessible to other individuals in the home. I had little to no control over my own phone, online access, or financial records."). In contrast, the police report Plaintiff filed states that her personal information was stolen from under her carport while her home was being renovated in 2018. R. Doc. 10-9, p. 2.

[52] *Compare* R. Doc. 10-9 with R. Doc. 10-10, p. 2, ¶ 5 ("In **2021**, I contacted Discover's fraud department and informed them that I was a minor when the account was opened. I pleaded with them to investigate the account and remove it from my credit. Discover refused to assist me or acknowledge my age or legal incapacity.") (emphasis in original). The FTC Identify Theft Report also states that Plaintiff discovered the allegedly fraudulent account in February 2025. R. Doc. 20-6, p. 3.

[53] R. Doc. 24, pp. 1-2.

Financial Protection Bureau ("CFPB") is not in the record; however, the referenced correspondence to Plaintiff, dated May 14, 2025, states, in relevant part, "Due to your assertions to the CFPB, we completed an investigation and have deleted the above-referenced account due to fraud ….Since it appears that an individual may have accessed certain pieces of your personal information, we encourage you to consider contacting each of the credit bureau agencies to place a fraud alert on your credit reports."[54]

The evidence currently before the Court raises a genuine disputed issue of fact as to whether a valid agreement was ever formed between Plaintiff and Defendant or whether Plaintiff was, instead, the victim of identity theft. Under these circumstances, narrowly tailored discovery on the issues of contract formation and ratification/confirmation and a summary trial are warranted.[55] Defendant's Motion should be denied without prejudice pending the outcome of the summary trial.[56]

---

[54] R. Doc. 10-4, p. 2; R. Doc. 20-5, p. 2. The correspondence from Defendant to the CFPB may be in the record in Civil Action No. 25-648 (*see* R. Doc. 1-1, p. 21 in that case); however, because that information was not submitted for consideration in connection with the Motion, it was not considered.

[55] *Siefke v. Toyota Motor North Am., Inc*., No. 25-406, 2025 WL 2901531, at **2-3 (E.D. Tex. Oct. 10, 2025) (granting motion for limited discovery and permitting limited arbitration-related discovery on the issue of contract formation); *Cf. Ameriprise Financial Services, Inc. v. Etheredge*, 277 Fed.Appx. 447 (5th Cir. 2008) (affirming district court's denial of discovery where the plaintiff had not stated what specific discovery was requested and had not denied that signatures on agreement containing arbitration provision were his).

[56] In reply, Defendant recognizes that several cases have found that, where there is doubt about the formation of the arbitration agreement, particularly where the plaintiff claims to be the victim of identity theft and submits a sworn statement, discovery and a summary trial on the issue of formation of the arbitration agreement are appropriate. R. Doc. 19, pp. 9-10 (collecting cases).

9

### III. CONCLUSION

Whether the parties must arbitrate Plaintiff's claims in this case requires the Court to first decide the threshold question of whether the parties entered into any arbitration agreement at all. Plaintiff and Defendant have submitted evidence that creates a genuine disputed issue of fact which requires limited discovery and a summary trial to resolve.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Compel Arbitration and Dismiss,[57] filed by Capital One, N.A., be **DENIED WITHOUT PREJUDICE** pending the outcome of a summary trial to address the issue of the existence of an arbitration contract between the parties, specifically contract formation and ratification/confirmation.

Because of the recommendation, **IT IS ORDERED** that the Motion to Stay Discovery and All Other Pending Pre-Trial Deadlines,[58] filed by Capital One, N.A., is **DENIED**. If the recommendation is adopted, fact discovery in this case may proceed limited **only** to the issues of contract formation and ratification/confirmation. Any such fact discovery shall be concluded by no later than **April 23, 2026**, as set forth in the current Scheduling Order.[59] Additionally, if the recommendation is adopted, a summary trial will be scheduled after the limited discovery deadline to address the issue of to address the issue of the existence of an arbitration contract between the parties, specifically contract formation and ratification/confirmation.

Signed in Baton Rouge, Louisiana, on January 28, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[57] R. Doc. 8.

[58] R. Doc. 27.

[59] R. Doc. 26.